IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel*. BRIAN WALL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3-07-0091 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| CIRCLE C CONSTRUCTION, LLC, | ) | |
| PHASE TECH, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' AMENDED COMPLAINT IN INTERVENTION

The United States of America *ex rel* Brian Wall, on behalf of the United States' agencies, the United States Department of the Army (Army) and the United States Department of Labor (DOL), states as follows:

### Introduction

1. This is an action for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, common law, and equity. In sum, Defendants filed false payroll certifications in order to get reimbursed for work done on a government contract at Fort Campbell that did not meet government requirements. The Complaint demands monetary compensation and other relief for the United States.

### Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the clams herein occurred at parts of the Fort Campbell military

base which are located in the Middle District of Tennessee. Specfically, one of the buildings at issue in the contract was located in this District, and the payroll certifications were submitted to an office in this District.

4. The causes of action alleged in this complaint are timely brought within the applicable limitations periods.

## The Parties

5. Plaintiff United States, through the Department of Defense, operates the military base located at Fort Campbell, which is located in both Tennessee and Kentucky.

6. Relator Brian Wall is an individual residing in Southside, Tennessee within the Middle District of Tennessee.

7. Defendant Circle C Construction, LLC (Circle C) is a Kentucky corporation with its principal place of business in Deerfield Beach, Florida.

8. Defendant Phase Tech LLC (Phase Tech) is a Florida corporation that is authorized to conduct business in Tennessee.

## Factual Allegations

### The Davis-Bacon Act

9. The Davis-Bacon Act requires contractors with the government to pay workers the prevailing wages, without deduction and without exception. 40 U.S.C. § 3142.

10. The contractor and any subcontractor must also certify to the government that it is providing correct and complete payroll information that identifies all laborers at the contract worksite and that all such laborers are paid the requisite prevailing wages. 40 U.S.C. § 3145; 29 C.F.R. § 5.5(a)(3)(i) & (ii)(A)-(B). These documents are known as payroll certifications.

11. The falsification of any of the above certifications can subject the contractor or subcontractor to civil prosecution under the False Claims Act. 29 C.F.R. § 5.5(a)(3)(ii)(D).

The Government Contract

12. On March 4, 2003, the United States awarded a contract to Circle C Construction LLC in the amount of $1,925,047. See Ex. 1 (contract). The contract was for Circle C to do construction work on buildings at Fort Campbell military base. Upon information and belief, about fifteen percent of the work to be done under the contract was electrical.

13. Circle C was the general contractor and has also been awarded other contracts to perform work for the United States government at times material hereto.

14. Circle C and all of its subcontractors were required to comply with all provisions of the Davis-Bacon Act, and compliance with this Act was made an express term in the contract at 52.222-6. Id. at 232.

15. The contract requires all workers to be paid the prevailing wage rate, according to their job classifications and in accordance with the Davis-Bacon Act. Id. at 232 & 248.

16. Wage determinations are included as an express condition of the contract, as determined by the DOL. These wage determinations represent the "prevailing wage" for each classification of worker and are the wages Circle C, and any subcontractor, was required to pay its workers. The wage determinations for work done in Kentucky were set forth in the contract. Id. at 248.

17. As the prime contractor and as the party who signed the contract with the United States government, Circle C owed a non-delegable duty to all workers on the job to ensure they were paid the prevailing wages in accordance with the contract and federal law. The duty to pay

workers prevailing wages exists regardless of whether workers are paid by the general contractor or a subcontractor.

The Subcontract

18. Without ever informing the United States, Circle C utilized Phase Tech as a subcontractor to perform electrical work at all times material to this contract. Upon information and belief, Circle C utilized Phase Tech to do all of the electrical work on the contract.

19. Relator Brian Wall began work on the project in July 2004. He was directly employed by Phase Tech, the subcontractor, and indirectly employed by Circle C, the prime contractor. Wall was employed as an electrician on this project, and his responsibilities included running conduit, pulling wire, installing fire alarms, placing electrical panels, wiring office lighting and fixtures and grounding the building.

20. As an electrician, the prevailing wage determination for his job classification was $19.19 per hour and an additional $3.94 in fringes totalling $23.13 in hourly compensation for work done in Kentucky.

21. Phase Tech paid an hourly rate of $16.00 an hour to Wall for work performed in Kentucky and a lower rate for work performed in Tennessee.

22. Ryan McPherson began work on the project in September 2004. He was directly employed by Phase Tech, the subcontractor, and indirectly employed by Circle C, the prime contractor. McPherson worked as an electrician and continued in this job through about May 2005. His responsibilities included running conduit, pulling wire, installing fire alarms, placing electrical panels, wiring office lighting and fixtures and grounding the building. McPherson was also paid an hourly rate of $16.00 for work in Kentucky.

23. Upon information and belief, Phase Tech as subcontractor for Circle C employed other laborers at the contract worksite in addition to Wall and McPherson.

24. During Wall's and McPherson's employment for Phase Tech as a subcontractor and Circle C as prime contractor, Defendants did not pay Wall or McPherson the prevailing wages for their respective job classifications for their work in Kentucky.

<u>The False Payroll Certifications</u>

25. As a condition of the government contract, Circle C was required to and did file weekly certified payrolls with Fort Campbell's Director of Contracting. These certified payrolls required Circle C to disclose all persons who Circle C or its subcontractor(s) had employed during each reporting period and to certify that those persons had been paid the prevailing wages required. Specifically, in these certified payrolls, an agent for Circle C certified as follows:

> ***I, John W. Cates Secretary do hereby state***: 1) ***that*** I pay or supervise the payment of the persons employed by Circle C Construction LLC on the above referenced project; that during the payroll period commencing on __ day of _____ __ and ending the __ day of _____, 20__, ***all persons employed on said project have been paid the full weekly wages earned***, that no rebates have been or will be made either directly or indirectly to or on behalf of said Circle C construction LLC/Contractor from the full weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in regulations, part three (29 CFR subtitle A), issued by the Secretary of Labor under the Copeland Act as amended . . . 2) ***that any payrolls otherwise under this contract required for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract***; that the classifications set forth therein for each laborer or mechanic conform for the work he performed, 3) that any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a state apprenticeship agency recognized by the Bureau of Apprenticeship and Training United States Department of Labor, or if no such recognized agency exists in a state are registered with the Bureau of Apprenticeship and Training United States Department of Labor, that: A) where fringe benefits are paid to approved plans,

- 5 -

funds, or programs in addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fring benefits as listed in the contract have been paid have been or will be made to appropriate programs for the benefit of such employees, except as noted in section 4(C) below.  B) where benefits are paid in cash each laborer or mechanic listed in the above referenced payroll have been paid, as indicated on the payroll, an amount of not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in section 4(C) below.  C) Exceptions.  Exceptions (Craft) - Not applicable. . . .
***The wilful falsification of any of the above statements may subject the contract or subcontractor to civil or criminal prosecution***, see section 1001 of Title 18 and section 231 of Title 31 of the United States Code. (emphasis added).

26. During the period when Wall and/or McPherson were employed for Defendants at the worksite, all of Circle C's payroll certifications were false for two reasons. First, they failed to disclose that Wall, McPherson or any other Phase Tech employee was doing work on the contract. In fact, these payroll certifications did not disclose Phase Tech as a subcontractor whatsoever. Second, they falsely asserted that Defendants were paying the prevailing wage to employees, including subcontracted employees.

27. The United States believes that there will be, after a reasonable opportunity for further investigation or discovery, evidence that Circle C utilized additional Phase Tech employees to do electrical work at the worksite whom it also failed to report on its certified payrolls. If discovery shows this to be the case, then additional payroll certications may be false as well.

28. Agents of Circle C personally signed its payroll certifications at issue attesting to their accuracy.

29. Circle C had actual knowledge that, in failing to disclose its employees and in falsely certifying that the employees were paid the prevailing wages, the certified payrolls were

- 6 -

false. Alternatively, Circle C acted in deliberate ignorance or reckless disregard of the truth or falsity of its certifications.

30. Phase Tech did not file any payroll certifications for this government contract.

31. The United States believes that there will be, after a reasonable opportunity for further investigation or discovery, evidence that Phase Tech knew that it had to furnish certified payroll information concerning the government contract, but nonetheless failed to do so and acted in deliberate ignorance or reckless disregard of the truth or falsity of Circle C's false certifications.

32. Had the United States known that Circle C and Phase Tech were not complying with their obligations under the Davis-Bacon Act and the payroll certifications, the United States would not have issued reimbursement undertakings totaling approximately $3,238,042.58.

Claim I: False Statements

31 U.S.C. § 3729(a)(2)

33. Paragraphs 1 through 32 are realleged as though fully set forth herein.

34. Defendants knowingly made, used or caused to be made or used false records and statements to get false or fraudulent claims paid or approved by the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(2), specifically, the payroll certifications, with false certifications about who was on the payroll and whether prevailing wages were being paid, which were submitted to Fort Campbell as a requirement of getting a reimbursement for the work in the contract attached as Exhibit 1.

35. Because of Defendants' acts, the Government sustained damages in an amount to be determined at trial.

Claim II: Unjust Enrichment

36. The United States realleges and incorporates by reference paragraphs 1 through 35 of this Amended Complaint, as though fully set forth herein.

37. By reason of the foregoing conduct, Defendants were unjustly enriched at the expense of the United States in an amount to be proven at trial, and in equity and good conscience, the money should be returned to the United States.

Count III: Payment by Mistake

38. The United States realleges and incorporates by reference paragraphs 1 through 37 of this Amended Complaint, as though fully set forth herein.

39. By reason of the foregoing conduct of defendants, the United States made payments under mistake of fact.

40. As a result of these payments by mistake, the United States has sustained substantial damages, in an amount to be proven at trial.

PRAYER FOR RELIEF

41. WHEREFORE, Plaintiff, the United States, demands judgment against Defendants jointly and severally as follows:

A. Under Claim I (False Claims Act), a sum equal to three times the amount of damages the United States has sustained, including investigative costs, plus such civil penalties as are allowable by law; or

B. Under Claim II (Unjust Enrichment), a sum equal to the amount by which Defendants were unjustly enriched, plus interest and costs; or

C. Under Claim III (Payment by Mistake), a sum equal to the amount which the

United States paid by mistake, plus interest and costs; and

D. Such other relief as this Court may deem just and proper, including the imposition of a constructive trust over funds received in payment of the contract and subcontract in this case, together with interests and costs of this action.

Respectfully submitted,

For the United States:  EDWARD M. YARBROUGH
United States Attorney for the
Middle District of Tennessee


By: s/ Ellen Bowden McIntyre
Assistant United States Attorney
Suite A-961, 110 Ninth Avenue South
Nashville, TN 37203-3870
615/ 736-5151

For the Relator:  James Sewell Higgins
Jonathan Allen Street
116 Third Avenue South
Nashville, TN 37201
615/353-0930

Perry A. Craft
Matthew E. Wright
214 Centerview Drive, Suite 233
Brentwood, TN 37027
615/309-1707

- 9 -