IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel*. BRIAN WALL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:07-cv-00091 |
| | ) | JUDGE SHARP |
| v. | ) | |
| | ) | |
| CIRCLE C CONSTRUCTION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF UNITED STATES' OPPOSITION TO
CIRCLE C CONSTRUCTION LLC'S PROPOSED CONCLUSIONS OF LAW**

Circle C's proposed conclusions of law urge this Court to adopt erroneous views of governing law, ignore or misapply persuasive caselaw from other Circuits, and award zero dollars in damages. The United States asks this Court not to enter those proposed conclusions of law for the following reasons: (1) The United States was injured; (2) the United States' damages theory fits squarely within existing False Claims Act damages caselaw; (3) damages do not equal worker underpayments; (4) damages do not equal Circle C's payments to Phase Tech in Kentucky; (5) the United States met its burden of proof on recoupment and/or withholding; and (6) the United States has no duty to mitigate its damages.

**I.     Circle C's Fraud Harmed the United States**

Circle C asserts that only the Phase Tech workers were harmed, not the government. This is wrong. Both the United States and the workers were harmed. The government includes Davis-Bacon Act requirements in its contracts for the dual purposes of giving local laborers and contractors "'fair opportunity to participate in building programs when federal money is involved and to protect local wage standards by preventing contractors from basing their bids on wages

lower than those in the prevailing area." *United States ex rel. Wall v. Circle C Constr., LLC*, 697 F.3d 345, 355 (6th Cir. 2012). The United States obviously has an interest in protecting workers on federal construction contracts. The United States more than satisfied its burden of showing by a preponderance of the evidence that Circle C's vitiation of the contractual protections for those workers harmed the United States and its interests. *See* United States' Proposed Findings of Fact (USPFF), ¶¶ 65-66, 68, 70 & 72. Circle C never rebutted that showing. In short, the government did not get the benefit of its bargain, which in this case included protecting third party workers on the contract.

Circle C relies on *United States ex rel. Windsor v. Dyncorp*, 895 F. Supp. 844, 850 (E.D. Va. 1995), for the proposition that there is no logical nexus between payrolls and economic injury to the government. But the portion of *Dyncorp* that Circle C relies on only said that "a contractor's ***failure to submit payroll reports***, in and of itself, causes no economic loss to the government and is not a 'claim' within the meaning of the [False Claims Act]." *Dyncorp*, 895 F. Supp. at 850 (emphasis added). But this part of *Dyncorp* has no application here, since Circle C ***submitted*** false payrolls. *See Circle*, 697 F.3d at 357. And the *Dyncorp* court went on to write that there would be damage and overcharging the government in a situation with intentional misclassification due to the government being "deprived of a benefit of its bargain." *Dyncorp*, 895 F. Supp. at 851.

Two other district court cases similarly found that there could be an economic injury in a False Claims Act suit predicated on Davis-Bacon Act violations. *See United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union No. 20 v. Horning Investments, LLC*, 2013 WL 5503327, *9 (Oct. 1, 2013) (Doc. No. 244-5); *United States ex rel. IBEW, Local Union No. 98 v. Farfield Co.*, 2013 WL 3327505, *4 (E.D. Pa. July 2, 2013) (Doc. No. 289-1).

Circle C argues that the United States did not satisfy the standard set by a different Circuit Court in *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 839 (D.C. Cir. 2012). That court indicated that the government must show that "'the performance the government received was worth less than what it believed it had purchased.'" *Id*. But this is clearly not the standard in the Sixth Circuit, and it departs from the mandate in this case. *See Circle C*, 697 F.3d at 358 (the government may recover as actual damages under the FCA "the difference between what it paid and what it should have paid for the goods"). Even if the *Davis* case governed this Court, the United States met that standard. The United States paid more for its contract with Circle C in order to ensure that it received Davis-Bacon Act compliance, including accurate payroll certifications. What the government received was worth less than what it bargained for. USPFF, ¶¶ 14, 16-18, 21, 70 & 104-05.

That the Army got buildings from the tainted work does not obviate the injury to the government's qualitative injuries to its goal of protecting local workers. *See*, *e.g.*, *United States v. Van Gorp*, 697 F.3d 78, 89-91 (2nd Cir. 2012). The trial evidence demonstrated that absolutely no unfairness results to Circle C, since it gets to keep 98.4% of the untainted portion of the $20,555,581.88 that the Army paid out on this contract. *See* USPFF, ¶¶ 22 and 77.

II. **The United States' Damages Theory Fits Squarely within Applicable Caselaw**

Circle C next argues that no courts have recognized an "ineligible payments" theory and that this case does not fit within six groupings of False Claims Act cases in which Circle C concedes that damages equal all government payments. But Circle C misanalyzes and misapplies these cases, which strongly support awarding *all* of the ineligible contracts payments to the United States here. Circle C also identifies other court decisions that Circle C thinks are

3

problematic for the United States' theory; but Circle C again either misanalyzes those decisions or – in one instance – cites bad law.

Initially, Circle C makes much of the phrase "ineligible payments" – as if those are magic words that must appear in other court decisions to be cognizable. But that overly narrow view is misplaced. The phrase "ineligible payments" does not appear frequently merely because the bulk of False Claims Act jurisprudence concerns Medicare and Medicaid fraud. The United States uses the phrase here to describe the damages that apply in this *sui generis* False Claims Act suit predicated on Davis-Bacon Act violations.

Circle C also alleges that the United States is seeking to change Sixth Circuit law on damages. But to the contrary, the United States has repeatedly briefed how its damages theory falls within the Sixth Circuit's precedent – including the mandate in this case – and is consistent with caselaw from other Circuits that more closely resembles the specific facts here.

Circle C's argument that this case does not fit within the six so-called groupings of court decisions where all government payments equal damages similarly fails.

### A. The Purported "No Value for Goods" Cases

This case fits within the two decisions that Circle C somewhat misleadingly describes as "no value for goods" cases: *United States ex rel. Compton v. Midwest Spec., Inc.,* 142 F.3d 296 (6th Cir. 1997), and *United States v. Science Applications International Corp*., 626 F.3d 1257 (D.C. Cir. 2010). *See* Doc. No. 313-1 at PageID # 7290-91. Although part of the *Compton* decision was predicated on the provision of brake shoe kits that had no value, the Sixth Circuit gave the following reasoning:

> Permitting the government to recover the contract price thus is consistent both with Midwest's suggested theory (since the value of the goods promised (about $1.3 million) less the value received by the government (zero) equals the contract price, and with the general rule recognized in the Uniform Commercial Code that

4

> *a buyer may reject goods outright "if the goods or the tender of delivery fail in any respect to conform to the contract*." U.C.C. § 2-601.

*Compton,* 142 F.3d at 305 (emphasis added). The Sixth Circuit further agreed with the government that "allowing a setoff based on value purportedly received would create a perverse incentive system" that goes against public policy. *Id*. at 305 n.8. As in *Compton*, the testimony from both Jeanne Shykes and Mary Callahan was consistent with the Army not paying for goods that do not comply with contract requirements. *See* USPFF, ¶¶ 21 and 70. And as in *Compton*, allowing an offset for the building value (which Circle C never established at trial) would create a perverse incentive system for contractors to submit fraudulent payroll certifications knowing that the damages would always be zero or close to it.

The *Science Applications International Corp*. (*SAIC*) decision from outside this Circuit does not help Circle C either. The *SAIC* court noted that:

> In some cases, such as where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages.

626 F.3d at 1279. Since in this case, a preponderance of the evidence showed that the contract requirements at issue were aimed at benefiting third party workers, the United States has also satisfied the damages test for showing all payments as full damages in the D.C. Circuit.

### B. The Purported "Unqualified to Perform Services" Cases

This case fits the damages model set forth in the two decisions that Circle C improperly calls "unqualified to perform services" decisions: *United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003), and *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008). *See* Doc. No. 313-1 at PageID # 7291-92.

5

Circle C tries to pigeonhole the *Mackby* decision as inapposite to this case, since it involved a clinic that performed physical therapy, but was ineligible to bill for that therapy since Mackby was neither a doctor nor a physical therapist. *See Mackby*, 339 F.3d at 1018. Although medical reimbursement and Army contracting payments differ, the United States presented analogous testimony about how the affected Army funds were ineligible for payment. *See* USPFF, ¶¶ 21 and 70. That Circle C was theoretically qualified to do the work and get paid for all of it if Circle C had not engaged in fraud is irrelevant.

Similarly, despite Circle C's arguments to the contrary, the *Rogan* case strongly supports the United States' position. For instance, the decision states:

- "[L]aws against fraud protect the gullible and the careless – perhaps especially the gullible and the careless." 517 F.3d at 452.

- "The United States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers; the False Claims Act does this by insisting that persons who send bills to the Treasury tell the truth." *Id*.

- "The government offers a subsidy . . . with conditions. When the conditions are not satisfied, nothing is due. Thus, the entire amount that Edgewater received on these 1,812 claims must be paid back." *Id*. at 453.

- The possibility that the United States would have paid for the patients' care elsewhere should not allow "Rogan to keep money obtained from the Treasury by false pretenses." *Id*.

The fact that *Rogan* involved health care issues hardly renders it inapplicable, and nothing in the decision itself limits its application to cases that do not involved kickbacks.

**C. The Purported "Thwarted Purpose of the Contract" Cases**

This case further fits within the three cases that Circle C groups into a category of cases where the purpose of the contract is thwarted: *United States ex rel. Liotine v. CDW Government, Inc*., 2012 WL 2807040 (S.D. Ill. July 10, 2012) (Doc. No. 244-4), *United States v. Incorporated*

*Village of Island Park*, 888 F. Supp. 419 (E.D.N.Y. 1995), and *United States v. DRC*, Inc., 856 F. Supp.2d 159 (D.D.C. 2012).  *See* Doc. No. 313-1 at PageID # 7292-94.

Circle C's attempt to distinguish *Liotine* – the case involving goods sold in violation of the Trade Agreement Act – falls flat.  The *Liotine* court noted that the United States' damages equated to the "entire amount paid for [the products sold in violation of the TAA]," since otherwise the United States may not sustain any damages for the knowing violations" of that law other than the civil penalty.  *Liotine*, 2012 WL 2807040 at *11.  The same logic and policy rationale – which the Sixth Circuit also expressed in *Compton* – applies here.  The United States should not receive zero in damages award despite Circle C's False Claims Act liability.  Moreover, nothing in *Liotine* restricted it to situations where only both purposes of a contract were thwarted.  *See Liotine*, 2012 WL 2807040 at *11 ("CDW-G is not entitled to keep money obtained from the government under false pretenses").

Similarly, Circle C's attempt to distinguish the *Island Park* case fails.  There, the district court held that the damages equaled all paid grant funds and mortgage subsidies, since these federal housing funds were paid in contravention of the Department of Housing and Urban Development's affirmative goal to promote fair housing.  *Island Park*, 888 F. Supp. at 443.  So too here, the Army had a goal of promoting local labor in its contracts, and it unwittingly paid out funds that contravened that goal.  The same analysis applies to the *DRC* case, in which the federal funding was meant "in part to promote foreign policy objectives."  *DRC*, Inc., 856 F. Supp.2d at 169 n.11.

### D.  The Purported "No Value, Not Less Value" Case

The United States also fits into the "full payments as damages" model in *United States v. Van Gorp*, 697 F.3d 78 (2nd Cir. 2012).  Circle C references *Van Gorp* as a case in which the

government received "no value as opposed to less value" such that it is inapplicable to this case. Doc. No. 313-1 at PageID # 7294. But the Second Circuit in *Van Gorp* explicitly endorsed the government's position there that the full damages model is appropriate where the government loses its opportunity to pay the affected grant funds to a recipient who would have used them as intended. 697 F.3d at 88. Here, the Army likewise lost it opportunity to retain and pay a contractor that would not have vitiated its labor goals.

### E. The Purported "Unauthorized Use' of Grant Funds Case

Circle C implies that *United States v. Karron*, 750 F. Supp. 480 (S.D.N.Y. 2011), has no bearing here. *See* Doc. No. 313-1 at PageID # 7294. The *Karron* court ruled that the proper measure of damages when the product – a computer model for which funds were spent on unauthorized uses – lacks an ascertainable value is the full amount of government money the defendant received. 750 F. Supp.2d at 492. Although the facts in *Karron* and this case differ, Karron's principle that all government funds spent may constitute damages when the government's damage is intangible still applies.

### F. The Kickbacks Cases

Circle C quotes *United States ex rel. Gale v. Omnicare, Inc.*, 2013 WL 5330826, *6 (N.D. Ohio Sept. 21, 2013), for its passage in a False Claims Act case predicated on kickbacks on how the Sixth Circuit has not definitively addressed whether the government's loss is the entire amount paid by the government on the false claims or whether value received should be subtracted from that amount. *See* Doc. No. 313-1 at PageID # 7295. But the *Gale* court did not decide one way or the other and merely said that it was a complex issue that "may require additional briefing." *Gale*, 2013 WL 5330826, *6. This Court has the benefit of ample briefing

8

on these issues and should enter its order based on the preponderance of evidence that the government should not have paid out the ineligible funds to Circle C.

### G. Remaining Circle C Points and Caselaw

In addition to these six purported groupings of cases, Circle C made several other arguments, which all lack merit.

Circle C employs a "snowball effect" argument by saying that the United States' theory would render every minor contract violation a basis for False Claims Act damages. To illustrate, Circle C gives the example of a tree that is not planted. But that minimizes the nature of Circle C's fraud here. It also disregards that the Sixth Circuit has already specified limits on False Claims Act liability, such as that false certifications must be premised on violations of conditions of payment, not just conditions of participation. *See United States ex rel. Hobbs v. MedQuest Assoc., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013). Thus, the law already insulates certain conduct from resulting in False Claims Act liability, and the fraud here clearly fell into a more serious category involving conditions of payment. *Compare Circle C*, 697 F.3d at 355 ("The payment of federal funds is contingent upon the receipt of the contractors' weekly certifications").

Circle C's citation to *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012), also is inapposite. *See* Doc. No. 313-1 at PageID # 7296. In that case, the sole defect was "the failure to maintain documentation for those services" and those documents lacked any value since the services were provided. *Davis*, 679 F.3d at 840. But here, the intangible damage to the government's labor goals is far greater than a failure to maintain records. So *Davis* has no bearing here.

Circle C cites *United States v. Bornstein*, 423 U.S. 303, 317 n.13 (1976) for its finding that the actual damages in that case equal the difference between the market value of the tubes

the government received and their market value if they had been as specified. *See* Doc. No. 313-1 at PageID # 7296. But *Bornstein* is likewise distinguishable, since this case does not constitute a "market value" type of case and instead involves a qualitative injury like that in the caselaw discussed above.

Circle C also relies on *Ab-Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429 (Fed. Cl. 1994). *See* Doc. No. 313-1 at PageID # 7296. But the Court of Federal Claims is a court of limited jurisdiction, and its decisions have limited precedential value for this Court. Moreover, at least one subsequent decision of the Court of Claims itself has rejected and criticized *Ab-Tech*'s position on False Claims Act damages as contrary to prior Federal Circuit precedent. *See Veridyne Corp. v. United States*, 101 Fed. Cl. 651, 656 n.2 (Fed. Cl. 2011) ("The undersigned also does not endorse the Ab-Tech court's characterization of the FCA's penalties as compensating for actual damages . . . " (citing *Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 n.3 (Fed. Cir. 1994)). This Court should decline to follow *Ab-Tech*'s poorly reasoned decision that limits damages to concrete capital injuries and ignores intangible injuries. *Ab-Tech* is bad law, and it conflicts with a long line of Sixth Circuit precedent, including *Compton*, and more recent caselaw from outside of this Circuit, like *Rogan*.

Circle C next incorrectly describes the *United States v. Ekelman*, 532 F.2d 545 (6th Cir. 1976) decision. *See* Doc. No. 313-1 at PageID # 7298. But the Sixth Circuit in *Ekelman* merely held that the government was entitled to the reasonable expenses of preserving property that it would not have had to maintain but for the defendant's fraud. *Ekelman*, 532 F.2d at 515. Thus, *Ekelman* does not negatively impact this case in any way.

Circle C also relies on *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637 (6th Cir. 2002), as showing that damages do not always equal all government payments. *See* Doc. No.

313-1 at PageID # 7298-7300.  But that case about a helicopter that did not conform to contract requirements and crashed does not help Circle C.  The Sixth Circuit clarified that "market value" and "diminished value" were two different concepts.  *Boeing*, 302 F.3d at 648.  The Sixth Circuit ruled that the government could "recover the benefit of its bargain with Boeing," which would have been the value of the aircraft if it had been of its specified quality.  *Id*. at 648-49.  Applying that principle here results in awarding the United States as actual damages the amount of the fixed price contract linked to the false payrolls.

### III. Damages Do Not Equal Worker Underpayments in this False Claims Act Case

With little explanation, Circle C continues to argue that the Sixth Circuit ruled that worker underpayments equal damages.  *See* Doc. No. 313-1 at PageID # 7300.  Circle C is wrong.  Nothing in the decision held thus, and the Sixth Circuit did not disagree with the United States' damages theory.  Instead, the Sixth Circuit wanted more details and explanation on certain facts underlying that theory.  *See Circle C*, 697 F.3d at 359 (remanding for more detail in Shykes' estimation).

Additionally, until the remand, Circle C never argued that worker underpayments equaled damages.  Given that Circle C never even raised this argument in prior proceedings, the United States hardly waived its opposition to that theory as Circle C now claims.

Circle C's current position that federal regulations limit the amount that the government can withhold to worker underpayments is wrong as applied to this False Claims Act case for several reasons.  First, the trial evidence showed that withholding was impossible for the Army at the time of the fraud, because the Army did not know about the fraud then.  *See* USPFF, ¶ 67.  Indeed, there are no regulations that govern what to do in situations where the government does not know about the fraudulent payrolls at the time when they are submitted.  *See id*.

Second, damages here are determined under the False Claims Act, not under Davis-Bacon Act administrative regulations. The two statutory schemes are separate. *See* 48 C.F.R. § 52.222-8 (falsification of payrolls subjects a contractor to False Claims Act liability); *Circle C*, 697 F.3d at 352 & 354 (finding that the "injuries and remedies under the [False Claims Act] and Davis Bacon Act are separate and distinct," that "the regulations explicitly provide that the falsification of payrolls may subject the contractor to liability under the FCA," and that deferral to the Department of Labor was not warranted).

Third, alternatively, even if the Davis-Bacon Act regulations somehow governed this situation, they do not command the result that Circle C wants. For instance, several regulations state that the contracting officer shall take action "to cause the suspension of any further payment . . . until such violations have ceased." 48 C.F.R. § 52.222-7; *see* 29 C.F.R. § 5.9 (same suspension of payment until "the violations are discontinued or until sufficient funds are withheld to compensate employees for the wages to which they are entitled and to cover any liquidated damages which may be due"). The evidence in this case universally showed that Circle C never remedied the payroll violations, such that any withholding would have remained in effect through the present day. *See* USPFF, ¶¶ 81 and 85-86.

Fourth, Circle C never grapples with the Davis-Bacon Act regulations' references to liquidated damages. The United States has not tried to compute what liquidated damages could equal, since they are not an available remedy under the False Claims Act. *See Circle C*, 697 F.3d at 352. But if the regulations applied fully as Circle C argues, the withheld amount would be much higher than worker underpayments, since the withheld amount would include liquidated damages. Those liquidated damages may also have continued to run given the long-standing nature of the violation. In any event, there is no evidence before the Court on what the liquidated

12
Case 3:07-cv-00091 Document 319 Filed 06/30/14 Page 12 of 18 PageID #: 7405

damages would cost, and this Court need not decide that issue which is irrelevant to this suit. The United States only raises the issue to show the defects in Circle C's analysis.

Fifth, Circle C cites to no cases indicating that worker underpayments are the damages in a False Claims Act case predicated on Davis-Bacon Act violations. The three cases similar to this one – *Dyncorp*, *Horning*, and *Farfield* – all support the United States' view on damages in a case with facts like those here. *See supra* at 2.

Consequently, Circle C's criticisms of Ms. Shykes' testimony for failing to specify how much money she had available for withholding at any given moment in time are irrelevant. And Circle C's related claim that the Sixth Circuit "recognized that this very scenario [where Ms. Shykes could not explain how much money she had available to withhold] was not proven by the Government in its summary judgment," Doc. No. 313-1 at PageID # 7304, has no basis. The Sixth Circuit did not address the withholding issue whatsoever.

Finally, even if the Court agreed that worker underpayments constituted damages, the evidence of that underpayment would far exceed the amount proposed by Circle C. Charles Cooper's calculations on the underpayment were inherently flawed and fail to include eleven Phase Tech workers besides Mr. Wall and Mr. McPherson. *See* USPFF, ¶¶ 87-98.

### IV. Circle C's Payments to Phase Tech Do Not Equal the Damages Amount

Circle C alternatively argues that the measure of damages should equal Circle C's payments to Phase Tech for the affected buildings in Kentucky (not Tennessee). *See* Doc. No. 313-1 at PageID # 7306-09. Yet Circle C does not cite any legal support for this proposition, with the exception of the Sixth Circuit wanting this issue addressed on remand. And no caselaw supports Circle C's position, which conflicts with the body of False Claims Act damages caselaw. *See supra* at § II.

Moreover, Ms. Shykes and Ms. Callahan testified with sufficient detail to back up the United States' actual damages and explain why the United States did not base that number on the payments to Phase Tech (lack of privity and fixed price nature of contract) and why the United States included work in Tennessee (because the payrolls for that work were false due to saying that they included all workers, but really omitted Phase Tech workers). *See* USPFF, ¶¶ 70 & 73. So the United States has more than satisfied its burden and addressed this issue.

Although Circle C addressed its argument that the United States failed to satisfy its burden of showing that Phase Tech did the exterior electric work in this section, that argument is really irrelevant as whether the Phase Tech payments equate to the total damages. But in any event, the United States satisfied it burden of proving that Phase Tech did 98% of all the electrical work on the affected buildings, and the Court should not credit the recent change of testimony by Mr. Cates and Mr. Cooper. *See* USPFF, ¶¶ 39 & 42-56.

## V. The Government Met Its Burden of Proof on Recoupment and/or Withholding

Circle C claims that the government failed to prove that the full damages amount sought by the United States would have been withheld and that doing so was required by the mandate. *See* Doc. No. 313-1 at PageID # 7309-10. This argument lacks merit. First, the Sixth Circuit did not make this finding and addressed the subject only in so far as it repeated Circle C's appellate arguments. *See Circle C*, 697 F.3d at 358 (Circle C argued *inter alia* that "it is speculative to assume, as Shykes did in her declaration, that if the government had investigated the Wall and McPherson misclassification claims, which it did not do at any time during the construction project, it would have withheld $553,807.71").

Second, the trial evidence eliminated any speculation about Ms. Shykes' position and showed that the Army would have stopped payments to Circle C under the contract and that the

14
Case 3:07-cv-00091 Document 319 Filed 06/30/14 Page 14 of 18 PageID #: 7407

Army seeks recoupment of as the single damages amount. *See* USPFF, ¶¶ 67-70 & 72. Circle C has not rebutted this evidence, and Mr. Cates even conceded that he knew Circle C would not get paid if he submitted false payrolls. *See* USPFF, ¶ 71.

Third, Circle C's suggestion that everything would have been resolved if the government had informed Circle C of its fraud is absurd. Circle C's position amounts to a hypothetical with no support. *See* USPFF, ¶ 75. If the Court indulged in such probability analysis, then it would also infer that Circle C would have settled this litigation years ago, the workers would have been repaid, and this case would be over. There is simply no basis to credit Circle C's probability argument now, especially given Circle C's failure to resolve any of the issues in this case to this day. Moreover, applying such leniency runs counter to the goals of the False Claims Act and would render it toothless. *See Circle C*, 697 F.3d at 358 ("'Damages awarded under the [False Claims Act] are typically liberally calculated to ensure that they afford the government complete indemnity'").

## VI. The United States Does Not Have a Duty to Mitigate Its Damages

Circle C asserts that the United States failed to mitigate its damages by failing to withhold an amount equal to worker underpayments. *See* Doc. No. PageID # 7305-06. But this argument has no merit for several reasons.

First, there was no evidence at trial that the government intentionally failed to withhold money from Circle C after its first received notice of the fraud after the *qui tam* was filed.

Second, Circle C does not cite even one court decision to support its position that the United States was somehow obligated to withhold money from Circle C either after the *qui tam* was filed or after the United States intervened.

Third, by the time the United States intervened on October 29, 2007, *see* Doc. No. 9, the work on the affected delivery orders during 2005 and 2006 had ended. To the extent that the Army continued to pay Circle C for ongoing work on the contract, that money was paid for other buildings that were not tainted by false payroll certifications. Instead, that money was paid as part of the large, ongoing construction contract between Fort Campbell and Circle C.

Fourth, and most importantly, there is ample law rejecting the mitigation of damages argument that Circle C now makes. This defense is contrary to the plain language of the FCA. *See* 31 U.S.C. § 3721(a) (stating that a person who violates the Act "is liable to the United States for . . . 3 times the amount of damages which the Government sustains because of the act of that person. . . ."); *see United States ex rel. Marcus v. Hess*, 317 U.S. 537, 539, 542 (purpose of the FCA is to provide "complete indemnity" and to make the United States "completely whole").

Courts have explicitly held that the duty to mitigate does not apply to fraud actions, including actions brought under the FCA. For example, the Fourth Circuit held this doctrine inapplicable in an FCA case, because "[h]aving by his fraud thrust this burden on the United States, the appellant cannot be exonerated by the failure of the Government to cast it off at the most propitious time"). *Toepleman v. United States*, 263 F.2d 697, 700 (4th Cir. 1959). District courts have held similarly. *See*, *e.g.*, *United States ex rel. Monahan v. Robert Wood Johnson Univ. Hosp. at Hamilton*, 2009 U.S. Dist. LEXIS 111347, *21 (D.N.J. Dec. 1, 2009) (Doc. No. 289-2) (holding that the government "has no duty to mitigate damages in fraud actions, including those under the FCA" and that defendant cannot shield itself by arguing that the government should have done more to stop it from perpetuating a fraud); *United States v. Aging Care Home Health, Inc*., 2006 WL 2915674 (W.D. La. Oct. 6, 2006) (Doc. No. 289-3) (granting

government's motion to strike mitigation defense, since "the government has no duty, in any event, to mitigate its losses").

Finally, Circle C's position is inherently incongruous. After submitting false payroll certifications, Circle C blames the government for its failure to catch this fraud and collect money for damages sooner, *compare Rogan*, 517 F.3d at 452, during a period in which the government was actively litigating its rights in Court. To argue that the United States must use pre-judgment remedies in False Claims ACt cases or be foiled when the time comes for the Court to award a monetary judgment is bad policy that Circle C would no doubt complain about if the government had explored this option at the time. *Compare* Doc. No. 135 & 136 (Sixth Circuit upholding Chief Judge Haynes' denial of Circle C's motion to stay execution of judgment).

## VII. Conclusion

For all of the above reasons, the United States respectfully asks this Court not to enter Circle C's proposed conclusions of law and to instead enter the correct proposed conclusions of law submitted by the United States.

    Respectfully submitted,

    DAVID RIVERA
    United States Attorney

By:    s/ Ellen Bowden McIntyre
    ELLEN BOWDEN MCINTYRE (BPR 023133)
    Assistant United States Attorney
    Suite A-961
    110 Ninth Avenue South
    Nashville, TN 37203
    (615) 736-2125

17
Case 3:07-cv-00091   Document 319   Filed 06/30/14   Page 17 of 18 PageID #: 7410

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was sent by United States mail, electronic delivery, and/or other proper means of service, to **Perry Craft** and **Matthew Wright**, Craft & Sheppard, P.L.C., 1604 Westgate Circle, Suite 1, Brentwood, TN 37027; **James Sewell Higgins** and **Jonathan A. Street**, 525 4th Avenue South, Nashville, TN 37210; **Timothy W. Burrow**, Burrow & Cravens, P.C., 1700 Hayes Street, Suite 202, Nashville, TN 37203, this 30th day of June, 2014.

                                        s/ Ellen Bowden McIntyre
                                        ELLEN BOWDEN MCINTYRE